IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MC OIL and GAS, LLC, a Nevada limited liability company,<br><br>                     Plaintiff,<br><br>v.<br><br>ULTRA RESOURCES, INC., a Wyoming corporation, UPL THREE RIVERS HOLDINGS, LLC, a Delaware limited liability company, and AXIA ENERGY, LLC, a Delaware limited liability company,<br><br>                     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING THE LETTER-IN-LIEU**<br><br>Case No. 1:15-cv-0038-DN<br><br>District Judge David Nuffer |

Defendants Ultra Resources, Inc. ("Ultra"), UPL Three Rivers Holdings, LLC ("UPL"), and Axia Energy, LLC ("Axia") (collectively "Defendants") move[1] for partial summary judgment ("Motion") on the sixth cause of action brought by Plaintiff MC Oil and Gas, LLC ("MC Oil").[2] The parties' memoranda and supporting documentation have been carefully reviewed. For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

MC Oil buys and re-sells wax crude oil from oil producers in the Uintah Basin in Utah. Axia began producing wax crude oil in the Uintah Basin in late 2011. On April 24, 2013, MC Oil and Axia entered into an agreement (the "Purchase Agreement") covering the sale and delivery by Axia, and the purchase and receipt by MC Oil, of crude oil under the terms and conditions specified in the Purchase Agreement. On or about October 1, 2013, pursuant to an Assignment, Bill of Sale, and Conveyance (the "Axia to UPL Assignment"), Axia sold certain of its oil and gas properties in the Uinta Basin to UPL.[3]

---

[1] Defendants' Motion for Partial Summary Judgment Regarding Letter in Lieu, docket no. 202, filed October 14, 2015.

[2] Second Amended Complaint and Demand for Trial by Jury at 30, docket no. 76, filed June 4, 2015.

[3] *See* Letter-in-Lieu and accompanying documents, docket no. 8-1, filed under seal on February 25, 2015.

Axia, UPL, and Ultra notified MC Oil of this transaction by a Letter-in-Lieu of Division Order dated December 12, 2013 ("Letter-in-Lieu").

On January 13, 2015, Ultra communicated to MC Oil that, "[i]n light of the dramatic recent drop in oil prices, effective March 1, 2015, we do not plan to deliver further barrels for MC Oil under the April 24, 2013 agreement between MC Oil and Axia Energy."  Ultra discontinued delivering and selling crude oil to Plaintiff on March 1, 2015. MC Oil commenced this lawsuit on February 24, 2015,[4] asserting, among other things, an indemnification cause of action.[5]

MC Oil has alleged that the Letter-in-Lieu "represented that UPL Three Rivers and Ultra would fulfill and comply with Axia's obligations under the Agreement with respect to MC Oil."[6] This interpretation is the basis of MC Oil's Sixth Cause of Action.[7] Defendants, however, argue that the indemnity provisions in the Letter-in-Lieu are limited to the specific issues addressed in the Letter, and make no other representations. MC Oil contends there is a genuine dispute regarding the representations made in the Letter-in-Lieu. According to MC Oil, the Letter-in-Lieu evidences that Axia was assigning its duties and obligations under the Purchase Agreement to Ultra, and that Ultra intended to accept and fulfill those duties.

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences

---

[4] Complaint and Demand for Trial by Jury, docket no. 2, filed February 24, 2015.

[5] *Id.* at 30.

[6] Second Amended Complaint and Demand for Trial by Jury ¶ 54, docket no. 76, filed June 4, 2015.

[7] *Id.* ¶¶ 148–153.

[8] Fed. R. Civ. P. 56(a).

therefrom in the light most favorable to the party opposing summary judgment."[9] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[10] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11]

## UNDISPUTED MATERIAL FACTS

The parties have offered limited factual allegations in the present Motion and Memorandum in Opposition[12] to the Motion. The parties' proffered factual allegations are all undisputed.

1.      The Indemnity Provisions [in the Letter-in-Lieu] state:

Buyer [UPL Three Rivers] and Seller [Axia] in consideration of Oil Producer's [MC Oil] acceptance of this letter hereby agree to protect, indemnify, and hold Oil Purchaser harmless for any claim, loss, costs, or expense resulting to Oil Purchaser by reason of Oil Purchaser's reliance upon the representations made in this letter.

Buyer [UPL Three Rivers] and Ultra Resources each hereby agrees to indemnify you [MC Oil] against any loss, cost, damage, or expense occurring as a result of your making remittances in the manner specified herein. Buyer and Seller request that you accept this Letter-in-Lieu of Transfer or Division Order as notification of the conveyance and acquisition, pursuant to all existing Division Orders, Transfer Orders or other agreements under which you have heretofore remitted proceeds to Seller with respect to the sale of production from the property.[13]

2.      MC Oil's Second Amended Complaint fails to allege that it was harmed as a result of its reliance on any particular representation actually found in the Letter-in-Lieu or its reliance on the payment instructions found in the Letter-in-Lieu. Nor is there any record evidence of the same.[14]

---

[9] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[10] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[12] Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Regarding Letter in Lieu ("Opposition"), docket no. 233, filed October 21, 2015.

[13] Motion at v (quoting Letter-in-Lieu at 1-2 ("Letter-in-Lieu"), Exhibit 1, docket no. 202-1, filed October 14, 2015); Opposition at 3 (undisputed).

[14] *Id.* at v–vi; Opposition at 4 (MC Oil states that this fact is disputed because "the Court has already found that MC Oil's Complaint adequately alleges that it relied on representations found in the Letter in Lieu and that it did so to its detriment." In support, MC Oil cites to this Court's Memorandum Decision and Order denying Defendants' motion to dismiss MC Oil's

3.      Immediately preceding the First Indemnity Provision, the Letter-in-Lieu states:

Each of [UPL] and Ultra Resources understands that [Axia], or its predecessor in title, have executed Division Order and/or Transfer Orders and/or Production Purchase and Sale Contracts covering the production from the properties. This letter is executed by [Axia], [UPL], and Ultra Resources as an agreement in lieu of having separate Division Orders and/or Transfer Orders prepared and executed.[15]

4.      Immediately preceding the Second Indemnity Provision, the Letter-in-Lieu states:

IT IS THE INTENTION OF SELLER AND BUYER THAT THERE BE NO SUSPENSION OR INTERRUPTION IN PAYMENTS TO BE MADE BY OIL PURCHASER WITH RESPECT TO THE PROPERTY. IF THIS REQUEST IS NOT RECEIVED IN TIME TO MEET YOUR CLOSING OR CURRENT MONTH'S SALES, PLEASE MAKE THE CHANGE EFFECTIVE AS OF THE DATE OF LAST SETTLEMENT, WITHOUT SUSPENDING PAYMENT.[16]

5.      Attached to the Letter-in-Lieu as an exhibit was the Axia to UPL Assignment with Axia as assignor and UPL Three Rivers as assignee, which conveyed certain of Axia's assets, including various oil leases, subleases, leaseholds, and sales and purchase contracts, identified and described on Exhibit D of the Assignment.[17]

6.      Exhibit D of the Axia to UPL Assignment specifically described and listed the [Purchase] Agreement between MC Oil and Axia as an assigned asset.[18]

---

indemnification claim. *See* Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, docket no. 75, filed May 22, 2015.  MC Oil's reliance on the motion to dismiss Memorandum Decision and Order to dispute the above proffered fact is misplaced. The Memorandum Decision and Order denying Defendants' motion to dismiss the indemnification claim was under the lenient motion to dismiss standard of review, which required the Court to accept all well-pled factual allegations as true and to view the allegations in the light most favorable to MC Oil. Thus, at the motion to dismiss stage, the Court did not make any factual findings, but, rather, it credited all well-pled allegations in the complaint and drew all reasonable inferences in MC Oil's favor. Under the summary judgment standard, MC Oil must present some evidence that creates a genuine issue of material fact. This, MC Oil has failed to do.).

[15] Opposition at 5 (quoting Letter-in-Lieu at 1); Reply in Support of Defendants' Motion for Partial Summary Judgment Regarding Letter-in-Lieu ("Reply"), docket no. 246, filed October 24, 2015 (Defendants do not address this fact in their Reply).

[16] *Id.* (quoting Letter-in-Lieu at 2); Defendants do not address this fact in their Reply.

[17] *See* Letter-in-Lieu and accompanying documents, docket no. 8-1, filed under seal on February 25, 2015; Defendants do not address this fact in their Reply.

[18] *Id.*

7.     MC Oil's President and Vice President have stated and testified that MC Oil understood that the Letter-in-Lieu represented that UPL Three Rivers and Ultra would fulfill and comply with Axia's obligations under the [Purchase] Agreement with respect to MC Oil.[19]

8.     MC Oil's President and Vice President have stated and testified that MC Oil accepted the Letter-in-Lieu because they relied upon such representations and the parties' course of dealings up to that point.[20]

## DISCUSSION

Whether the Letter-in-Lieu represents that Axia was assigning its duties and obligations under the Purchase Agreement to Ultra, and that Ultra intended to accept and fulfill those duties is a matter of contract interpretation. "In interpreting a contract, the intentions of the parties are controlling."[21] "If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement."[22]

"A contract qualifies as ambiguous if it lends itself to 'more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'"[23] "Whether ambiguity exists in a contract is a question of law."[24] "A court first must decide whether a contract contains a facial ambiguity arising from the contractual language."[25] However, in spite of the phrase "facial ambiguity," "[i]n determining whether a contract is ambiguous the court is not bound to consider only the language of the contract."[26]  That is, a court can look beyond the face of the contract. "The

---

[19] Opposition at 5 (citing Declaration of Mark McSwain ¶ 58, docket no. 12-2, filed March 5, 2015; Declaration of Jesse McSwain ¶ 58, docket no. 12-3, field March 5, 2015); Defendants do not address this fact in their Reply.

[20] *Id.* at 6 (citing docket nos. 12-2 at ¶ 61, 12-3 at ¶ 61); Defendants do not address this fact in their Reply.

[21] *Winegar v. Froerer Corpo*, 813 P.2d 104, 108 (Utah 1991).

[22] *Id.*

[23] *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1109 (10th Cir. 2009) (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002)).

[24] *Winegar*, 813 P.2d at 108.

[25] *Id.* (citing *Daines v. Vincent*, 190 P.3d 1269, 1276 (Utah 2008)).

[26] *Peterson v. Sunrider Corp.*, 48 P.3d 918 (Utah 2002).

court may consider any 'relevant and credible evidence of contrary interpretations' in making this legal determination."[27] A court should also "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none."[28] "If the court concludes that 'the interpretations contended for are *reasonably supported* by the language of the contract,' the contract is ambiguous on its face."[29] "Only then does the question of ambiguity become factual, requiring the court to admit parol evidence of the parties' intentions in order to clarify the ambiguity."[30] "Conversely, if after considering such evidence, the court determines that the language of the contract is not ambiguous, then the parties' intentions must be determined solely from the language of the contract."[31]

MC Oil raises four arguments in support of its interpretation "that the Letter-in-Lieu also represented that Axia was assigning its duties and obligations under the [Purchase] Agreement to Ultra, and that Ultra intended to accept and fulfill those duties."[32] Specifically, MC Oil states that its interpretation is supported by: (1) "the acknowledgement that Axia had executed Purchase and Sales Contracts covering the production from the Uinta Basin properties[;]" (2) "the statement that Axia and Ultra intended that there be no suspension of or interruption in payments made by MC Oil (which necessarily implies that they intended there be no interruption of oil being sold to MC Oil)[;]" (3) "the attached Axia- to-UPL Assignment that specifically identified the Axia-MC Oil contract as one of the assets that was being conveyed by Axia to Ultra[;]" and (4) the "testimony in this case that [MC Oil] understood the Letter in Lieu to be making that representation."[33] MC Oil underscores that its

---

[27] *J.R. Simplot,* 563 F.3d at 1109.

[28] *Café Rio, Inc. v. Larkin–Gifford–Overton, LLC,* 2207 P.3d 1235, 1240 (Utah 2009).

[29] *J.R. Simplot,* 563 F.3d at 1109.

[30] *Id.*

[31] *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995).

[32] Opposition at 7.

[33] *Id.*

"understanding of the representations made by the Letter-in-Lieu is thus in direct conflict with the interpretation that Defendants propound."[34]

MC Oil's interpretation twists the plain language of the Letter-in-Lieu. Nowhere in the plain language is there any representation that Ultra or UPL accepted or intended to accept Axia's duties and obligations under the Purchase Agreement.

The Letter-in-Lieu beings with the introduction that "[t]his letter is to inform you [MC Oil] of the following matters:"[35]

- Effective October 1, 2013 (the "Effective Date"), UPL Three Rivers Holdings, LLC ("Buyer"), acquired all of Axia Energy, LLC's ("Seller") interests in the oil and gas properties located in Uintah County, Utah that are shown on the attached Exhibit "A" (the "Properties"); and

- Ultra Resources, Inc. ("Ultra Resources") serves as marketing agent for Buyer for purposes of selling production from the Properties. Buyer is a wholly-owned subsidiary of Ultra Resources.

This introduction states that UPL has acquired all of Axia's interests in the oil and gas properties, and cites to an attached exhibit which indicates where the properties are located. The Purchase Agreement is not mentioned in the introduction, nor is any representation made regarding the Purchase Agreement.

The next paragraph states:

MC Oil and Gas, LLC ("Oil Purchase" or "you") is distributing revenue, or otherwise accounting for proceeds attributable to Settler's interests in production from the Properties. Each of Buyer and Ultra Resources understands that Seller, or its predecessors in title, have executed Division Orders and/or Transfer Orders and/or Production Purchase and Sale Contracts covering the production from the properties. This letter is executed by Seller, Buyer and Ultra Resources as an agreement in lieu of having separate Division Orders and/or Transfer Orders prepared and executed.[36]

---

[34] *Id.*

[35] Letter-in-Lieu at 1.

[36] *Id.*; *see also* Letter-in-Lieu and accompanying documents, docket no. 8-1, filed under seal on February 25, 2015 (containing Exhibit A).

MC Oil contends that because this paragraph acknowledges the Purchase Agreement between Axia and MC Oil, this somehow demonstrates that Ultra intended to accept and fulfill the duties of the Purchase Agreement. However, a facial reading of this paragraph does not support MC Oil's interpretation. Instead, it supports the conclusion that UPL and Ultra "understand" that Axia has executed "Division Orders and/or Transfer Orders and/or Production Purchase and Sale Contracts covering the production from the properties." But UPL and Ultra clarify that "[t]his letter is executed . . . as an agreement in lieu of having separate Division Orders and/or Transfer orders . . . ." The clarification limits the letter to Division Orders and/or Transfer Orders.

The next paragraph deals with indemnification. It reads:

> Buyer and Seller in consideration of Oil Purchaser's acceptance of this letter hereby agree to protect, indemnify, and hold Oil Purchaser harmless for any claim, loss, costs, or expense resulting to Oil Purchaser by reason of Oil Purchaser's reliance upon the representations made in this letter.[37]

This paragraph clearly narrows the scope of indemnification to "representations made in this letter." And, as will further be discussed below, the Letter-in-Lieu contains no representations regarding Axia's, UPL's, or Ultra's performance under the Purchase Agreement.

The final paragraph on the first page of the Letter-in-Lieu states:

> PAYMENT INSTRUCTIONS – Seller and Buyer hereby authorize and instruct Oil Purchaser, until further notice from Buyer, **to pay to Ultra Resources from and after the date of this letter,** all amounts which are in suspense or which become payable to Seller or its predecessors in title for the account of Seller or others, and for products produced or sold from the Properties. Payments should be made to Ultra Resources at the following address or such other address as Buyer or Ultra Resources may from time to time request[.][38]

The context of this paragraph is similar to the preceding paragraphs in that it deals with Division Orders. It directs MC Oil to submit its payments as of the date of the letter to Ultra, and specifies exactly

---

[37] Letter-in-Lieu at 1.

[38] *Id.* (proceeding this paragraph are payment instructions and account numbers).

what payments are to be remitted to Ultra. Again, nowhere in this paragraph is there any mention of the Purchase Agreement.

The second page of the Letter-in-Lieu consists of four paragraphs. The first paragraph informs MC Oil to contact Ms. Cynthia Journee (at a specific phone number and email account) if MC Oil has "any invoice settlement questions."[39]

The second paragraph on page two reads in bold capital letters:

IT IS THE INTENTION OF SELLER AND BUYER THAT THERE BE NO SUSPENSION OF OR INTERRUPTION IN PAYMENTS TO BE MADE BY OIL PURCHASER WITH RESPECT TO THE PROPERTY. IF THIS REQUEST IS NOT RECEIVED IN TIME TO MEET YOUR CLOSING OR CURRENT MONTH'S SALES, PLEASE MAKE THE CHANGE EFFECTIVE AS OF THE DATE OF LAST SETTLEMENT, WITHOUT SUSPENDING PAYMENT.[40]

MC Oil contends that because there is to be no suspension in payment, this "implies that they [Defendants] intended there be no interruption of oil being sold to MC Oil."[41] But this is an illogical leap. MC Oil makes payments under the Purchase Agreement as the Purchase Agreement requires and as oil is delivered. The delivery of oil is discussed—and arguably obligated—in the Purchase Agreement but not in the Letter-in-Lieu. But this paragraph says nothing about delivery of oil, it only states that payment will not be interrupted. The paragraph reveals the purpose of the Letter-in-Lieu as ensuring that the Buyer UPL receives payments.

The following paragraph states:

INDEMNITY – Buyer and Ultra Resources each hereby agrees to indemnify you against any loss, cost, damage or expense occurring *as a result of your making remittances in the manner specified herein*. Buyer and Seller request that you accept this Letter-in-Lieu of Transfer or Division Order as notification of the conveyance and acquisition, pursuant to all existing Division Orders, Transfer Orders *or other agreements under which you have heretofore remitted proceeds to Seller* with respect to the sale of production from the property."[42]

---

[39] *Id.* at 2.

[40] *Id.*

[41] Opposition at 33.

[42] *Id.* at 2 (emphasis added).

The plain language of this paragraph makes clear that UPL and Ultra agree to indemnify MC Oil as a result of MC Oil making *remittances* in the manner specified in the Letter-in-Lieu. Again, this paragraph only deals with payment by MC Oil, and ensures that MC Oil makes future payments to UPL.

The final paragraph on the second page of the Letter-in-Lieu further illustrates that the Letter-in-Lieu is only dealing with change in payments. The paragraph reads in relevant part: "Upon request, Buyer will furnish you a copy of the recorded conveyances mentioned above, when available; however, we shall appreciate your acceptance of *this letter to make the change in payments, as requested herein.*"[43]

Reviewed as a whole, the Letter-in-Lieu is an assurance to Axia's buyer that payments would flow to it. The document signed by Axia and UPL assure MC Oil that its payments would be properly directed to UPL, and assure UPL that it will receive the funds due it.

Summary judgment is appropriate because there are no genuine issues of fact. Although MC Oil's President and Vice President have testified to their understanding of the Letter-in-Lieu, the parties' intentions are determined from the plain meaning of unambiguous contractual language.[44] A party's unjustified subjective intent cannot be considered. Examining the individual paragraphs of the Letter-in-Lieu and reading the Letter as a whole reveals that there is no ambiguity. The plain language of the Letter-in-Lieu allows no other reasonable interpretation then that advanced by Defendants—that the Letter-in-Lieu directed payments by MC Oil and as assurance, offered MC Oil indemnification for harms caused as a result of MC Oil's making remittances in the manner specified in the Letter.

---

[43] *Id.* (emphasis added).

[44] *See Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003) (stating "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language").

**CONCLUSION**

For the reasons set forth above, Defendants' Motion[45] for Partial Summary Judgment is hereby

GRANTED.

Dated November 12, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[45] Docket no. 202.