IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MC OIL and GAS, LLC, a Nevada limited liability company,<br><br>               Plaintiff,<br>v.<br><br>ULTRA RESOURCES, INC., a Wyoming corporation, UPL THREE RIVERS HOLDINGS, LLC, a Delaware limited liability company, and AXIA ENERGY, LLC, a Delaware limited liability company,<br><br>               Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING CONSEQUENTIAL DAMAGES**<br><br>**[Filed Under Seal]**<br><br>Case No. 1:15-cv-0038-DN<br><br>District Judge David Nuffer |

Defendants Ultra Resources, Inc. ("Ultra"), UPL Three Rivers Holdings, LLC ("UPL"), and Axia Energy, LLC ("Axia") (collectively "Defendants") have moved[1] for summary judgment on Plaintiff MC Oil and Gas, LLC's ("MC Oil") request for consequential damages. The parties' memoranda and supporting documentation have been carefully reviewed. For the reasons set forth below, Defendants' Motion is DENIED.

## BACKGROUND

MC Oil buys and re-sells wax crude oil from oil producers in the Uintah Basin in Utah. Axia began producing wax crude oil in the Uintah Basin in late 2011. On April 24, 2013, MC Oil and Axia entered into an agreement (the "Purchase Agreement") covering the sale and delivery by Axia, and the purchase and receipt by MC Oil, of crude oil under the terms and conditions specified in the Purchase Agreement.[2] On or about October 1, 2013, pursuant to an Assignment,

---

[1] Motion for Partial Summary Judgment on Plaintiff's Claims for Consequential Damages and Memorandum in Support ("Motion"), docket no. 229, filed under seal on October 16, 2015.

[2] Purchase Agreement dated April 24, 2013, docket no. 18-1, filed under seal on March 3, 2015.

Bill of Sale, and Conveyance (the "Axia to UPL Assignment"), Axia sold certain of its oil and gas properties in the Uinta Basin to UPL.[3]

On January 13, 2015, Ultra communicated to MC Oil that, "[i]n light of the dramatic recent drop in oil prices, effective March 1, 2015, we do not plan to deliver further barrels for MC Oil under the April 24, 2013 agreement between MC Oil and Axia Energy." Ultra discontinued delivering and selling crude oil to Plaintiff on March 1, 2015. MC Oil commenced this lawsuit on February 24, 2015,[4] asserting several causes of action and requesting, among other things, consequential damages.

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[6] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[7] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

---

[3] *See* Letter-in-Lieu and accompanying documents, docket no. 8-1, filed under seal on February 25, 2015.

[4] Complaint and Demand for Trial by Jury, docket no. 2, filed February 24, 2015.

[5] Fed. R. Civ. P. 56(a).

[6] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[7] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan,* 647 F.3d 950, 959 (10th Cir. 2011).

**DISCUSSION**

"A non-breaching party may recover both 'general damages, which flow naturally from the breach, and consequential damages, which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into.'"[9] "To recover consequential damages, a non-breaching party must prove (1) that consequential damages were caused by the contract breach; (2) that consequential damages ought to be allowed because they were foreseeable at the time the parties contracted; and (3) the amount of consequential damages within a reasonable certainty."[10]

Defendants contend that MC Oil cannot satisfy any of the three required elements in order to recover consequential damages. According to Defendants,

> MC Oil's consequential damages theory is that if it does not receive 1,000 barrels of wax crude oil per day from Defendants, MC Oil cannot fulfill the minimum volume requirements in its contracts with the refineries to whom MC Oil sells wax crude oil and that, as such, MC Oil may be required to pay monetary damages to the refineries.[11]

Defendants argue that MC Oil cannot meet the first element—consequential damages were caused by the breach—because it cannot prove that it has suffered any consequential damages and also cannot prove that Defendants are the proximate cause of any purported consequential damages.[12] Defendants point out that "MC Oil has admitted under oath that it has not suffered any consequential damages . . . ."[13] Defendants argue that MC Oil cannot show proximate cause for two reasons. First, because MC Oil cannot show that it will fail to meet its volume commitment because there is always the possibility that "MC Oil could obtain additional

---

[9] *Cabaness v. Thomas*, 232 P.3d 486, 507 (Utah 2010) (quoting *Mahmood v. Ross*, 990 P.2d 933, 937 (Utah 1999)).

[10] *Mahmood,* 990 P.2d at 938.

[11] Motion at 2.

[12] *Id.*

[13] *Id.* at 3 (citing MC Oil 30(b)(6) September 8, 2015 deposition at 87:16-88:9, 90:6-9, exhibit 5, docket no. 239-3, filed October 22, 2015).

oil from one of its existing producers, or obtain oil from a new producer, and with this additional production MC Oil could meet its volume requirements with the refineries."[14] And second, Defendants contend that "MC Oil cannot prove that its failure to meet the volume commitments in its refinery contracts is the fault of Defendants."[15] Defendants state that "MC Oil is receiving decreased production from all or almost all of its Uintah Basin wax crude oil producers with whom it has long term contracts."[16] "Moreover, MC Oil's own voluntary actions have prevented it from meeting its volume commitments with the refineries. [For example a]fter Defendants ceased oil deliveries to MC Oil, and therefore after MC Oil knew that it would receive less oil to deliver to the refiners, MC Oil entered into a new contract with Chevron . . . ."[17] Defendants argue that instead of entering into a contract with Chevron, "MC Oil could otherwise have used [the oil] to meet the minimum volume requirements of its contract with Big West."[18]

Defendants argue that the consequential damages claim should also be dismissed because MC Oil cannot establish with reasonable certainty the amount of consequential damages it could allegedly suffer."[19] Defendants state that "[i]n the Rule 30(b)(6) deposition, MC admitted that 'any damages from potential exposure to damage claims by third parties for failure to meet volume requirements' would 'be speculative.'"[20] Finally, Defendants contend that "MC Oil cannot show that, at the time it entered into the [Purchase] Agreement with Axia, the parties contemplated that MC Oil would require Defendants' oil to meet contract obligations MC Oil

---

[14] *Id.* at 5.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 8 (quoting MC Oil 30(b)(6) September 8, 2015 deposition at 90:15–93:7).

had previously [and subsequently] undertaken."[21] Defendants explain that "[p]rior to entering into the agreement with Axia, MC Oil had entered into long-term contracts with three separate refineries in which MC Oil had promised to deliver to each refinery an amount of wax oil."[22] "Each of these three refinery agreements predated by at least nine months MC's agreement with Axia . . . . When MC Oil entered into its refinery agreement, it could not have believed that obtaining oil from Axia was necessary to meet its obligations to the refineries."[23] Defendants state that regarding the volume commitments that MC Oil has with the Big West refinery, the two companies "agreed and understood 'that MC Oil plans to supply Big West through underlying long-term contracts that MC Oil has with crude oil producers in the Uintah Basins.'"[24] According to Defendants, "Axia was not one of the producers that MC Oil identified to Big West as the underlying contracts from which MC Oil 'plans to supply Big West' to fulfill its volume requirements under the Big West agreement."[25] Defendants conclude that "neither MC Oil nor Axia contemplated nor could have contemplated that MC Oil would require oil from Axia to meet its commitments to Big West."[26]

MC Oil responds that its consequential damages are not barred simply because no actual damages have yet been incurred, and as for the remaining elements—causation, amount of damages and foreseeability of such damages—there are genuine issues of material fact that preclude summary judgment. Regarding the first point, MC Oil states that "Defendants'

---

[21] *Id.* at 9–10.

[22] *Id.* at 9.

[23] *Id.* at 9–10.

[24] *Id.* at 10.

[25] *Id.* at 11.

[26] *Id.*

argument for the requirement of actual damages is not consistent with Utah Law."[27] MC Oil contends that if Defendants argument is followed, then it "would preclude MC Oil from ever recovering damages after this case is concluded, even where Big West to then file suit for breach of contract against MC Oil. This is because of the 'one action rule.'"[28] Plaintiffs point out that "'[u]nder [the one action] . . . rule,[29] once a plaintiff suffers an actionable injury, she is entitled to recover damages not only for harm already suffered, but also for that which will probably result in the future . . . . Indeed, a plaintiff's failure to seek future damages in such a situation may very well preclude any [subsequent attempts] at recovery.'"[30] MC Oil states that it is entitled to assert all its potential future damages because it has established a cognizable claim for breach of contract.[31]

As of the date of the filing of this Motion, there seems to be no dispute that MC Oil has not already suffered consequential damages arising from Defendants' alleged breach of the Purchase Agreement.[32] However, to conclude on summary judgment that MC Oil *cannot* present evidence of any consequential damages as a result of Defendants' alleged breach of the Purchase Agreement would be premature because there are factual disputes regarding proximate cause, amount of damages, and foreseeability of the damages.

MC Oil's evidence may show proximate cause because Big West issued a notice of default to MC Oil shortly after Defendants stopped delivering oil to MC Oil, and MC Oil was

---

[27] Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Re: Consequential Damages at 16 ("Opposition"), docket no. 250, filed under seal on October 26, 2015.

[28] *Id.*

[29] Because the one action rule is not critical to the disposition of the current motion, this decision does not consider whether the tort one action rule discussed in *Seale v. Gowans,* 923 P.2d 1361, 1364 (Utah 1996) or some common law variant of the statutory mortgage one action rule established in Utah Code Ann. § 78B-6-901 applies in contract cases.

[30] *Id.* (quoting *Medved v. Glenn,* 125 P.3d 913 (Utah 2005)).

[31] *Id.* at 17.

[32] *See* Opposition at 5, 18.

unable to acquire cover barrels to supply Big West.[33] Whether this is simply a coincidence or the proximate cause of Defendants actions is a factual dispute.

MC Oil has presented evidence that creates a factual dispute regarding foreseeability. Could Axia reasonably foresee that its breach of the Purchase Agreement would cause MC Oil to incur consequential damages?[34] MC Oil contends that "Axia knew that MC Oil had long-term contracts with refineries prior to entering into the [Purchase] Agreement with MC Oil. Axia knew that MC Oil wanted a long-term contract with Axia. Axia knew that the barrels MC Oil was buying from Axia were being sold by MC Oil to Salt Lake City refineries."[35] Based on these facts, and "given Axia's assertions that it was doing business with Big West before entering the [Purchase] Agreement with MC Oil, it would be a reasonable inference that Axia also knew that Big West was . . . a customer with which MC Oil had a long-term obligation."[36] MC Oil argues that "a ju[r]y could reasonably infer that Axia could reasonably foresee that its breach would cause MC Oil to incur consequential damages to the refineries, such as Big West."[37]

And evidence has been presented, in the form of an expert report and testimony, from which the jury could potentially determine the amount of consequential damages.[38]

Viewing the evidence in the light most favorable to MC Oil, , a reasonable jury could find that MC Oil suffered consequential damages as a result of Defendants' alleged breach of the Purchase Agreement.

---

[33] Opposition at 6, 18.

[34] *See* Jesse McSwain's February 15, 2013 email to Cindy Turn, docket no. 229-9, filed October 16, 2015 (stating that most of MC Oil's contracts with producers and with the refineries are for seven years).

[35] Opposition at 18.

[36] *Id.* at 19.

[37] *Id.* at 22.

[38] Opposition at 10–11.

## CONCLUSION

For the reasons set forth above, Defendants' Motion[39] for summary judgment is DENIED.

Dated November 13, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[39] Docket no. 229.

United States District Court
for the
District of Utah
November 13, 2015

******MAILING CERTIFICATE OF THE CLERK******

RE: MC Oil and Gas v. Ultra Resources et al
1:15cv38 DN-DBP

Stephen J. Trayner
STRONG & HANNI
102 S 200 E STE 800
SALT LAKE CITY, UT 84111

Brent O. Hatch
HATCH JAMES & DODGE
10 W BROADWAY STE 400
SALT LAKE CITY, UT 84101

Tracy H. Fowler
SNELL & WILMER (UT)
15 W SOUTH TEMPLE STE 1200
GATEWAY TOWER WEST
SALT LAKE CITY, UT 84101

_____

Aimee Trujillo